For the record, we're calling 523-0944 People v. Amari Robinson. Is it Ms. Over? Yes, it is. Okay, Ms. Over, welcome to the 5th District. Thank you so much. You may proceed when you're ready. Thank you. Good afternoon, and may it please the Court. My name is Kathryn Oberer, and I represent Amari Robinson, whose family is with us today. Today I'd like to focus on the first issue in the brief, requesting a new trial. A new trial is needed because Amari's trial counsel was ineffective, leaving no confidence in the verdict in this case. The ineffectiveness was pervasive, spanning the entire trial, starting with jury selection all the way to the closing argument. I identified seven different types of mistakes that counsel made in the brief, labeled issues 1a through 1g, any of which individually or cumulatively require a new trial. Today I'd like to focus on two of those mistakes, which highlight how trial counsel in this case failed to challenge the weak evidence that the state presented. First, counsel's incorrect decision to concede that Amari confessed, when the only evidence of that is inadmissible and unreliable. And second, counsel's failure to challenge the early detective's testimony about ruling out an alternate suspect, who had been threatening the victim, Martin Morrow, just before his death. Those are issues 1b and 1f in the briefing. Starting with 1b, it was wrong for trial counsel in this case to concede that Amari confessed to principally committing a first-degree murder, because the only evidence of this was inadmissible and unreliable. To be clear, the state offered no confessions directly from Amari in this case. She was interviewed by police, it was reported, it was played in court, and she did not confess. Why is it inadmissible? The evidence is inadmissible. Right. What made it inadmissible? Yes, so there was no confession from Amari herself. The only evidence that the state offered of a confession instead is that she had this conversation with a person named Donta Bailey at a separate time, and that was inadmissible because it was hearsay. The facts of this case are almost identical to the Illinois Supreme Court of People v. Simpson. In that case and here, there was a witness, here, Donta Bailey, who had an out-of-court statement to a police officer that was reported about a conversation they supposedly had with a defendant. So when that's played in court, that out-of-court statement from the witness, that's hearsay. And you're referring to the video with the officer talking on the phone to Donta, because there were a number of videos in this matter. It's hard to keep all the videos straight. This is State Exhibit 77. They weren't labeled that way for us, so I'm trying to get a visual of the video because I looked at a number of videos. Yes, it's a body-worn camera video of Detective Vogel speaking to Donta Bailey, and Donta Bailey is on the phone. So you can see, I believe it's like an office. Correct, and you're looking down at the phone where he's looking down at the phone. Yes, yes. So that's the video that I'm referencing. Yes. Thank you for that clarification. Yes, and then you can hear Donta Bailey speaking. And his statements are the ones that are inadmissible hearsay under Simpson. They're out-of-court statements that weren't offered substantively here. That video was played in the State's case-in-chief during Detective Vogel's testimony, and he was also asked to testify to what Donta Bailey told him out-of-court. But Donta Bailey also testified. Is that correct? He did testify, and when he was asked, did Amari ever tell you that she was the one who did the shooting? He said no. All right. So would the tape then be allowed to contradict the testimony of Amari or of Donta? I'm sorry. Simpson, that Illinois Supreme Court case, says it's not admissible as a prior inconsistent statement because Bailey didn't have any personal knowledge of what he was talking about. He was talking about a shooting, and he was not there. So Simpson says that it can't come in substantively under that prior inconsistent statement component of the hearsay rule. It's almost identical facts to Simpson, another witness who made a reported out-of-state statement or, excuse me, out-of-court statement to the police that was hearsay because it was out-of-court, used substantively, and that witness had no personal knowledge of what he was speaking about. Can you remind me which officer was this who testified? Detective Vogel. Okay. Detective Vogel testified at great length about a number of things, correct? Yes, he was the lead detective. All right. Yes, yes. The last point I wanted to make about Simpson is that it says that there is no strategic reason for a defense attorney to fail to object to inadmissible evidence of a defendant's confession because it's so prejudicial. A confession is the most powerful piece of evidence that the state can offer, and its effect on the jury is incalculable. So just on that mistake alone, just the failure to object to that inadmissible video clip statement of Donta Bailey, that alone is reversible error under People v. Simpson. And we have in this case when that evidence was inadmissible, when there was no confession from Amari, there was no recording of this phone call where Amari supposedly made these statements about the shooting to Donta Bailey. It doesn't exist. And when that video clip, as I mentioned, was inadmissible under Simpson, it was simply ineffective for Amari's trial attorney to concede that Amari confessed under these circumstances. Counsel, I know you want to talk about a couple issues. There were issues with jury instructions, was there not? Yes. I had a really difficult time understanding in the record the jury instructions. Yes. Can you help explain that issue to me just a little bit more? Because the actual instructions, I can't tell what was tendered to the jury. I'm having a difficult time recognizing that. There were a few instruction errors. Is there a specific one you can say? I had a difficult time with all of the jury instructions, I'll be honest, in the record that I have. There were significant pages. Some looked like they were tendered, some looked like they were addressed, and I think they were marked given and some weren't. So could you help clarify that for me? Yes. So our concern in the brief is instructions that were not given to the jury. Relating to the confession issue, which I just mentioned, the wrong version of 3.06, 3.07, the IPI was requested. There's language that has to be included in that IPI. When there's a dispute, whether a defendant confessed, there's a bracketed language that you have to include that you tell the jury it's their factual decision to determine whether. And that statement was made by the defendant. When you have a dispute, again, Don Scali testified no, that video's saying yes. Do we know if that was given? Do we know if that was even anticipated? It was discussed at the jury instruction conference, but that bracketed language that the jury has to determine whether a defendant actually made a confession was never requested. You can see that when you look at the version in the record. It has markings at the bottom, marked given. That's what they agreed to give. I hope I'm explaining clearly. There's a portion of the instruction that you need to include if there's a dispute whether a defendant confessed. It's just confusing to me to tell what was given and what was not. That's where I'm having a hard time. That's what was discussed at the conference, that incomplete version of the instruction. That's the main problem there. There also are IPI instructions 3.15B, which they needed to determine whether the identification of people and objects on videos was proper. That's issue 1D in the briefing, and that instruction was never given at all. And we're certain that that one was not given. Right, there's no dispute about that. The state concedes that. Yeah, they don't say that. I believe those were at least the main instructions. All right, thank you. I apologize for interrupting you. Yes. I do see I think I have maybe one minute remaining. I did want to highlight that it's a huge problem here that trial counsel failed to challenge the lead detective's explanation for ruling out an alternate suspect, LaBelle Drusdale, who had been threatening the victim just before his death. The jury here actually told the court that they wanted information about alternate suspects, and trial counsel had a police report about this person, LaBelle Drusdale, threatening Martin just before the shooting, and trial counsel did not use that or give it to the jury in this case. She should have done so through an impeachment. She should have impeached Detective Rogel when he said that the relationship between LaBelle Drusdale and Martin Morrow, the victim, was fine. That police report said that's not true because LaBelle Drusdale and Martin Morrow were actually dating the same woman. LaBelle Drusdale was angry about that, and LaBelle Drusdale had been threatening Martin Morrow just before his death, and trial counsel was ineffective here for failing to impeach that testimony about ruling him out because the relationship was fine with the police report showing that the relationship was not fine. It's critically important when the jury wanted that evidence in the case, the failure to test the state's evidence in this case basically creates a situation where the state's case appeared stronger than it was because of trial counsel's inactions and failures to challenge the evidence here. So that is why we would request a new trial. And have all the errors preserved that you've argued today? They're always under ineffective assistance of counsel. So they're things that the attorney cannot do at all. So no, they're not preserved. They need to meet the Strickland standard, deficient performance and prejudice. And how do you think there's prejudice in this case? The state's case was weak. There was no eyewitness to the shooting. There were a lot of videos, but no videos of the shooting. There was no physical evidence that Amari fired a gun. There were lots of people there that night. There was a party. There actually was no gun recovered. So no gun at all. And the little evidence that I mentioned that the state did offer should have been challenged by trial counsel instead of conceded to. She shouldn't have conceded that there was a concession. She should have used this information about the alternate suspect to challenge the other little bits of information that the state had. So that's why trial counsel's actions were prejudicial. Okay. Questions? Thank you all very much. Thank you. You'll have some time after the state makes its argument. Thank you. Well. Good afternoon, Your Honor. May it please the court. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. Welcome to the Fifth District. Thank you. I've been here before, always very hospitable. It's a pleasure to come in this historic building and have an opportunity to argue. So I greatly appreciate it. I'll focus on the same issues that counsel has brought up, but I'm happy to answer any other questions. And pending time, I might jump into a few other matters with regard to the reply briefs, et cetera. So counsel has argued that trial counsel is ineffective for conceding the defendant made an admission with this crime. And that admission was the information that was contained on that phone call to Dante where she was telling him how she watched Martin die, how she was the one that pulled the trigger, and all those other gory details that were involved. It's the state's position that that is. That's pretty remarkable detail. It's extreme detail, including, as I pointed out, that he was choking on blood, which the forensic investigator, Dr. Bow, said that because of the perforation of his lungs, he would have been coughing up blood in that instance. And I argue that the mere observation of that in the brief indicates that this isn't a defendant who was scared by someone else firing shots, but stayed there and stood there long enough to observe what was happening after he was on the ground dying. And so I think that's pretty indicative of what this defendant's intent was. But to speak to the admission, it's our position that it's not hearsay. The video recording is properly admitted, even under censorship, because I believe it can be used to rehabilitate Dante's prior inconsistent statement. But, like, let's set that aside. Let's just theorize that it's not admissible. Connie Camaro testified to the same thing. She testified in open court that she heard those statements in real time. She was available to be cross-examined, et cetera. So take the recording part out of it. Defendant made those statements. Those are admissible as a statement by a party opponent. They were near in time to when the shooting occurred. They were corroborated by extensive other evidence, the 9-millimeter shells that she said she had used, the watching him bleed, how many times he had been shot. All of these things were corroborated. They were self-incriminating, obviously, against an interest. And the defendant was present and available to testify and be subject to cross-examination. So it is admissible as a statement by a party opponent. And she testified credibly because all of these other things corroborated what she had to say and what the defendant admitted to. Now, counsel had argued that that was admissible under the eavesdropping statute. But first of all, there is no recording from Conica that the eavesdropping statute only applies to recordings specific to her. And so it's not as admissible as that. And even the statement is also admissible because the defendant didn't have any expectation of privacy given the manner in which she made that phone call. It was either a FaceTime phone call or a Facebook video message based on what was going on in the phone. And she's broadcasting this on speakerphone to whoever might be within earshot. In Huff v. Spa, the Federal Circuit Court said that a person who fails to take simple precautions to prevent such exposure does not have a reasonable expectation of privacy with respect to those statements. And notably, Dante testified that hearing some of these things was so emotionally jarring that he had to walk away and leave the room and left the phone where Conica continued to hear these things. She was broadcasting it to whoever was. Clearly, she's not taken the slightest precaution to prevent that information from being known. And so there's certainly no implication of eavesdropping here, and there's no reasonable expectation of privacy to those statements. And Conica's testimony was corroborated. So it is credible testimony that can be used in this case. And that gets to defense counsel's strategy for conceding this admission. She conceded this admission, one, to maintain her own credibility, and two, because it was clearly admissible. And what she tried to do was take that admissible evidence and use it to her own advantage. She argued during closing arguments. There's a lot of beef between these families. She's trying to, you know, she's intentionally trying to put that emotion. She's trying to insult them because of what happened with her brother. And so she said, this is a 16-year-old. She's acting impetuously. She doesn't really believe that she's going to be charged with this crime because she was merely present. That was the entire theory of the defendant's case, that she was only present. But there was no motion in limine or anything to bar any of that evidence prior to it. Motion to suppress, motion in limine. Not that I recall. I don't believe that issue was litigated. As far as the video itself? Well, there was no video, right? Oh, the recording of Konica, correct. The recording, but then the video with relationship to the body camera and Dante. There was no motion in limine or motion to suppress those. Not that I recall. Okay, thank you. So I think I just spoke to what her trial strategy was. And her trial strategy was there were five other people here, many of whom had guns in their possession, had recently been armed with guns in their possession, and there was no direct evidence, no testimony that says this defendant fired it, no video evidence that said this defendant fired it. So she was going to rely on the fact that it was all circumstantial and that there were multiple people present and that this was just posturing on her part. And that's a valid trial strategy. Just because it's not successful doesn't mean that it's ineffective. And so because it was a strategic move to allow that information to come in. Regarding the jury instruction issue, 3.06 and 3.07 were tendered. It's CI-19, I believe, because there's two different sets. It is very confusing. I had to double-check it myself. But they are about to be given. The ones that were actually given were given. And I think if you check cross-reference of the record of proceedings, 3.0607 is there. Defendant's complaint is that there's certain bracketed language which would imply it's telling the jury, you need to determine whether this statement was made. Well, of course, defendant didn't ask for that to be instructed because the theory of the case was we're conceding that statement was made. So that's why it's not there. It was part of Pounce's trial strategy. It would have confused the jury and diminished her strategy if she said, well, now it's up for you to determine whether or not she actually made that statement. Whereas they conceded and argued the entire time, yes, she did make that statement. And they conceded it appropriately because it was admissible. With regard to 3.15, we did concede that the identification instruction wasn't given. And it wasn't given with regard to Crowell identifying the firearm, 3.15B. That wasn't given because IBI 3.18 instructs that expert testimony is not to be given a weighing instruction. If people be quite cloutier or cloutier, Illinois Supreme Court case says give 1.02, which is the believability of witnesses. So there's no special instruction for weighing expert testimony. We don't use 3.15 to weigh experts. We use that to weigh lay witness testimony. And so 1.02 was given. It's discussed in the record, and it's in the record of proceedings. So that's why 3.15 is not there. With regard to Mr. Driscoll or Driscoll's scoot is what he's referred to as frequently. Counsel, the troubling issue with this allegation that the counsel should have used him as an alternative suspect is really sort of twofold. Like, first of all, when you take on a strategy of saying somebody else did it, frequently you're now trying to prove to the jury that this other person committed the crime and not the defendant. And so you lose the presumption of innocence, and you actually take on a new burden when you're trying to say it wasn't me. It was this other person. The only evidence in this case that this individual had anything whatsoever to do was that Antonio Sims, a couple of weeks after the shooting, told the officer investigating Vogel that Martin told him, which is kind of a double here, he said Martin told him that this guy was beefing with him and that he'd made some kind of a threat. But no threat of murder, no specific threat or anything like that. And so when we get into the post-trial hearing on counsel's ineffectiveness, defendant has this burden now to make a record under Rule 341 to support his claim that you should have used this witness. And what did they present at that? A single page out of a police report that was taken three weeks after the incident. The incident was investigated for six months before the defendant was arrested. Defense counsel talked about the fact that there had been phone and social media records that were looked into. Other witnesses said that he wasn't involved. That's what Vogel reported, that he eliminated him as a suspect because other witnesses said he wasn't involved. And then counsel made an important statement. She basically said that she became aware through a parallel investigation very quickly that Scoot had nothing to do with this. And so when we think about, you know, counsel's aware that there's nothing to pin on this guy. Vogel went through the phones and the social media. The phones would have included geolocation information, which was used extensively in this case for the other potential suspects. All of that would have told you whether he was at the scene or not. The only evidence he'd ever been at the scene was that he dropped off Patrick Jordan several hours before anything happened. No one else testified he was present. There's really just no basis that has been made to support a notion that counsel is ineffective for not trying to point the finger at Scoot. And there's lots and lots of evidence and inferences from evidence. In her reply, defense counsel complained that we didn't cite anything in the record. Well, these are all inferences because the record they developed didn't ask these questions, probably because if you ask too many of these questions, you'll find out, well, obviously that person wasn't a suspect. So I think, you know, if we look at the common sense here and what counsel did say, there just wasn't a basis to try to hang this on another individual. Were there any other issues that your honors had particular questions about? Briefly touching on the sentencing, the People v. Spencer case, the Illinois Supreme Court case that came out after counsel filed their initial brief, it dealt with a 20-year-old who was getting a de facto life sentence, and it was essentially saying that, like, under the probation statute or under the corrections department statutes, after 20 years, that 20-year-old is eligible for review, and that's like a meaningful opportunity for review of their sentence. The Illinois Supreme Court says that that makes it not a de facto life sentence when you have that opportunity. Defendant in this case was 16. She was younger. But importantly, the statute applies to anyone under the age of 21 years old. So the same logic and rationale in Spencer applies equally in this case because it considers all those same factors of youth and its attendant circumstances even up to emerging adults. So in 20 years, the defendant is certainly going to have the opportunity for parole review, and she could possibly be paroled within 20 years if she's shown rehabilitative potential and things of that nature. So I think Spencer is directly on point with regard to whether or not her sentence is constitutional. And I see that I'm out of time. And if you guys have no other questions, I would just please ask that you affirm the defendant's conviction and sentence. Thank you. Thank you, Mr. Atwood. Ms. O'Byrne? Ms. O'Byrne, I have a question for you I didn't get to ask. You cited people being gays. Yes. Has that been overruled? Spencer did overrule that, correct. That was addressed in the briefing, but I don't think it applies here for the reasons mentioned in the reply. Okay. I just want to make sure I'm clear on that. Yes, that's correct. You also asked for a page extension in this case, did you? I did. Why was that? I mean, how many pages do you think you need? There's seven different types of mistakes that counsel made just at trial in sentencing. There were five different factors that were considered improperly. And then there's a constitutional error. There's also a cumulative error issue I raised. So seven in effectiveness arguments, eight with the cumulative error, five with the different factors. That's 13 plus the constitutional argument. That's 14 issues I've got to whip through in 20 pages. Okay. Is there something else? In 50 pages? In 20, there are five. Oh, I'm talking? Yes. Okay. Yes. I think there was a 70-page brief. Yes, there was. And I just want you to know for future reference that the – and Mr. Atwood, you as well, the Fifth District is taking a position that we're going to look on extensions like that unfavorably. Sure you are. Don't come looking for 70 pages. I do think – With that said, I want to give you time to – Of course. Of course. I did want to clarify the jury – one of the jury instruction issues, 3.15B. That was needed for three different pieces of evidence, an officer's identification of a person, Amari, an officer's identification of another person, Martin Morrow, and an officer's identification of an object, a gun. That needed to be given to the jury under People v. Thompson, an Illinois Supreme Court case, and People v. Garrett, a Fourth District case. So it's not just the one point that the state brought up here. It's all three of those different points of the instruction. How does that instruction apply to Thompson? To Thompson? When you say it's required under Thompson. Yes. Thompson says that when an officer identifies a person on the video, that the jury has to get instruction 3.15B that tells them that it's their decision to decide whether the officer's identification of a person on video is correct and that they should not give that testimony from the officer extra weight just because he's a police officer. That's in the instruction. Very good. Thank you. Yes, I did also want to address the other instruction issue, 3.06.07. Counsel's correct. It's only found on impounded common law, page 19. If you read it, you'll see it's incomplete. I wanted to talk about counsel's discussion of Kenneka Morrow's testimony. That wasn't admissible either. She lied and said she recorded this conversation between Donta Bailey, her child, and Amari, and there is no recording. The state conceded that today. She lied to bolster her testimony, and that was not corrected. It's almost identical to the errors in People v. Junior, the Fourth District case cited in the brief, in Glossa v. Oklahoma, the United States Supreme Court case in the brief, where a witness lies about some sort of collateral matter to bolster their testimony, and that's not corrected. It's reversible error. That testimony is simply not admissible. But I'm not sure how the eavesdropping statute is applicable there. I mean, they can cross-examine her. I recognize the issue of bolstering her testimony. Yes. But whether she lied about the recording or not, there's no recording, so I'm not sure how the eavesdropping statute is applicable there. It's an alternate argument. There is a dispute at trial about whether there was a recording, and post-trial the state said there was no recording. So if there is a recording, it's eavesdropping. If there's no recording, then you have the problem under People v. Junior in Glossa. But if there is a recording, then it may apply under eavesdropping, but there was never a recording presented to the jury. I agree. It's an alternate argument, so you don't need to address that, since the state's conceding that there is no recording, which is another problem with counsel failing to test the evidence here, failing to object to inadmissible evidence, creating the mirage that the state's case is stronger than it really was, when all they really have is that she was there, but they do not have that strong evidence she was the principal shooter. So trial counsel's actions here were prejudicial, and she was ineffective, and you should order a new trial, or re-sentencing, as argued in the briefs. One second. Yes. Question? No. Thank you very much. Okay. Thank you for your arguments here today. Thank you. You're both excellent on behalf of your clients. We appreciate your arguments and your travel here. Have a safe trip back. If the matter will be taken under advisement, we'll issue an order in due course. Thank you.